# SULLIVAN,

## JULY TERM, A. D. 1841.

---

### DEMING vs. COMINGS.

If the assignee of a mortgage obtains a conditional judgment against the purchaser of the equity of redemption, and executes a writ of possession; and the owner of the equity thereupon becomes the tenant of the assignee, agreeing to pay him rent; a possession thus held by the tenant for the term of one year will foreclose the mortgage.

If the party holding the equity of redemption deliver to the person holding the mortgage title, specific articles, under an agreement that they shall be applied in discharge of the debt, but afterwards settles the account, takes a negotiable note for the property, and negotiates it; he thereby rescinds the contract, and cannot afterwards insist that the delivery of the articles operated as a payment.

A mortgage may be assigned after an entry for the purpose of foreclosure, and the assignment will not, of itself, stay the foreclosure. If assigned for the purpose of preventing a redemption, or immediately before the right of redemption would expire, that may keep the equity open, until a tender can be made to the assignee.

If there has been a foreclosure of a mortgage, a subsequent receipt of part of the mortgage money, by the party holding the mortgage, is a waiver of the foreclosure.

Where a mortgage is made to secure several promissory notes, payable in successive years, and the first note not having been paid when it became due, a writ of entry is instituted, and a conditional judgment entered, for the amount of that note, under which possession is taken; if other notes become due while the possession is thus retained for the purpose of foreclosure, the party having the right of redemption cannot redeem without paying the amount of such other notes also, within a year from the time they respectively became payable. And so if possession is obtained peaceably, without process.

Where possession is taken under a mortgage, and the assignee of the equity of redemption takes a lease, and becomes tenant under the mortgage title, whether there can be a foreclosure against him, without a publication of a notice under the statute of July 4, 1834, *quere?*

WRIT OF ENTRY, to recover a tract of land in Cornish,

wherein the plaintiff counts upon his own seizin in fee, within twenty years, and a disseizin by the defendant.

The defendant pleaded that he was not guilty of disseizing the plaintiff in manner and form, &c.; on which issue was joined. Also, that on the 1st of April, 1837, one Cook was seized in fee of the premises, and conveyed the same in mortgage to one Spaulding, with condition for the payment of a certain sum of money, and that said mortgage has come by sundry assignments to the plaintiff, who has no other title or color of title—that after Cook had so mortgaged the premises, he conveyed the same to the defendant, who, by virtue thereof, entered upon the premises, and has since held the same—that after he became seized, and after the assignment to the plaintiff, and before any foreclosure of the mortgage, to wit., 5th June, 1839, he tendered the plaintiff $61, which he avers was in full of any and every sum of money then owing and legally secured to be paid by said mortgage, which the plaintiff refused, &c. To this plea the plaintiff, protesting that he was seized in fee and not in mortgage, replied, that at the time of the tender of said sum of $61, a much larger sum was due and owing to him on the mortgage, to wit., $348·57, and traversed that the sum of $61 was in full of the balance due, on which issue was joined.

On the trial it appeared that Barton Cook, who was seized in fee of the demanded premises, on the 17th of July, 1835, conveyed the same in mortgage to John S. Spaulding, to secure certain promissory notes of that date, amounting to $750; and the plaintiff produced six of the notes, four of which were for $100 each, and payable respectively in one, two, three, and four years from the first of April, 1836, with interest, annually, after said first of April, except the third, which did not purport to be on annual interest. The other two were for $125 each, payable severally in five and six years from said first of April, with interest annually. On the last was indorsed, April 1, 1836, $106·40, being on account of a deficiency in land.

On the 29th of April, 1836, Spaulding assigned the mortgage to Austin Tyler.

January 13th, 1837, Cook conveyed the premises to the defendant, subject to the mortgage.

August 26, 1837, Tyler commenced a suit upon the mortgage against the defendant, and at October term, 1837, a conditional judgment was entered for possession, unless the defendant paid $111·03 damages, and $4·97 costs.

A writ of possession issued, January 18, 1838, which was executed April 6, 1838, and the defendant became tenant of Tyler, and was to pay him rent.

Tyler received of the defendant sundry articles of produce during the succeeding year, and there was evidence tending to show that a part of it was to be applied towards a redemption of the premises; but it did not appear clearly that enough had been received at any one time to pay the amount of the judgment, and no settlement was made between them until after March 27th, 1839, on which date Tyler assigned the mortgage to the plaintiff.

After the expiration of a year from the time Tyler took the possession, the defendant settled with him for the produce, and received his note for the balance.

On the 5th of June, 1839, the plaintiff made a lease of the premises to the defendant, (who had continued in possession,) to hold until the 1st of April next ensuing, for the consideration of $40, and the defendant thereby agreed to surrender the possession at the expiration of the term. The lease contained a clause in these words: "reserving to said Comings all the right in equity to redeem said premises which he now has, during said term." At the same time the plaintiff executed a receipt to the defendant, of which the following is a copy, viz: "June 5th, 1839. Rec'd of H. H. Comings seventy-one dollars and five cents, to apply on the redemption of a farm specified in a lease bearing date of the 5th of June, 1839, from me to Heman H. Comings, provided said Heman H. Comings does redeem agreeable to the

Deming *v.* Comings.

time and terms specified in said lease ; otherwise, I promise to pay the above sum to said Heman H. Comings and interest." The sum of $40, for the rent, was paid at the same time.

The latter part of March, 1840, the defendant tendered to the plaintiff $60, and the receipt aforesaid, in redemption of the premises, which the plaintiff refused to receive, alleging that there was not enough, and he would not take part without the whole.

A verdict was taken for the plaintiff, by consent, subject to the opinion of this court upon the foregoing case.

*Harvey Chase*, ( with whom was *Handerson*,) for the plaintiff. The general question which this case presents is, as to the form of the judgment which is to be entered on the verdict ; whether it is to be as at common law, or conditional as on a mortgage ? This question is for the consideration of the court, sitting as a court of law. 1 *N. H. Rep.* 39 ; 2 *Ditto* 71. The demandant prays for a judgment as at common law.

We do not deny that the tenant, as the assignee of the mortgager, once had the right to redeem, but say that right has been foreclosed.

Tyler's possession, taken April 6th, 1838, was "obtained by a suit at law." It was, therefore, not within the enacting clause of the act of July 4, 1834. 2 *N. H. Laws* 151. It was saved by the proviso. We were not bound, then, to prove that notice of this possession was given by a publication in a newspaper. The possession was taken after condition broken, and we were not required to prove in any way that the tenant was notified of the purpose for which this possession was taken. It is presumed to have been for condition broken. 1 *N. H. Laws* 486 ; 5 *Mass. R.* 109, *Taylor* vs. *Wells.*

This possession by Tyler was duly continued by Comings, the tenant, as his tenant ; for if the mortgagee, or, (as in

this case,) the assignee of the mortgagee, is in possession by his tenant, he is in the continued actual possession required by the statute. 4 *N. H. Rep.* 424, *Kittredge* vs. *Bellows ;* 12 *Mass. R.* 26, *Hills* vs. *Eliot.* And this tenancy may as well be held by the mortgager, or his assignee, as by any other tenant. 6 *N. H. Rep.* 12. Tyler, being once seized, is presumed to have continued seized till a disseizin is proved. *Stearns on Real Actions* 42. If the tenant continued to occupy as Tyler's tenant, it is sufficient ; and if he held over the term, it is no evidence of an adverse possession. 1 *Caines' R.* 394, *Fitch* vs. *Marshall.* Tyler's seizin continued, therefore, till he assigned to Deming, the demandant. This possession, or seizin, was an interest which Tyler could convey by deed. 1 *N. H. Rep.* 169, *Brown* vs. *Cram; Ditto* 177, *Willard* vs. *Twitchell ;* 1 *Pick. R.* 27, *Hall* vs. *Leonard ;* 7 *Mass. R.* 139, *Withington* vs. *Gale ; Co. Litt.* 239, *b ;* 12 *Mass. R.* 26, *Hills* vs. *Eliot.* If the tenant still continued in possession, after the assignment, without any lease, till June 5, 1839, (some two months) he is presumed to have held in subserviency to the rights of the demandant, the true owner. 3 *N. H. Rep.* 49, *Lund* vs. *Parker ;* 9 *Johns. R.* 163, *Bonnel* vs. *Sharp ;* 16 *Johns. R.* 293, *Belden* vs. *Thomas.* The possession thus commenced by Tyler, and thus continued, first by Tyler, and then by Deming, for more than one year from April 6th, 1838, foreclosed the equity of redemption, on the 6th of April, 1839, unless the reservation contained in the lease, executed two months after the foreclosure, had the effect to convert an indefeasible estate into a mortgaged estate. We insist that a mortgage cannot be created in this way. Mortgages are made by debtors and not by creditors. The tenant was not the debtor, and had no estate in the land, and could not have till he redeemed, but is deemed to have been a stranger. 1 *N. H. Rep.* 169; 13 *Mass.* 515, *Green* vs. *Kemp ;* 5 *N. H. Rep.* 420, *Southerin* vs. *Mendum.* The defeasance, too, (if the reservation is called a defeasance,) should have been cotemporaneous with the deed. 1 *N. H. Rep.* 39.

If this reservation can have any operation as a conveyance, (which we do not admit,) it can only be by being construed as an agreement to convey on condition. But in such a case, payment would be a condition precedent, and the agreement would have been inoperative till the condition had been performed. 5 *Mass. R.* 321, *Lincoln & Kennebeck Bank* vs. *Drummond;* 12 *Mass. R.* 227, *Frazier* vs. *Cushman;* 2 *N. H. Rep.* 71, *Bickford* vs. *Daniels.* It is a general rule, in all conditions precedent, that nothing passes till the condition is performed. 2 *N. H. Rep.* 74; 7 *Mass. R.* 413. It is for this reason, too, that the reservation could not operate as a waiver of the foreclosure; for there being no performance, the waiver, (if so it could be called,) became a nullity—like a thing that never existed. In *Batchelder* vs. *Robinson,* 6 *N. H. Rep.* 12, there was a payment and acceptance. The language of the reservation and of the receipt both show that whatever the tenant's rights were before, they were to terminate April 1, 1840, if not exercised. The fair construction of the reservation itself is, that the demandant never intended to admit, and did not admit, that the tenant had, at the date of the lease, any right to redeem. This was a question about which the parties differed; and as they had no means of adjusting it amicably, they agreed that it should remain an open question till the termination of the lease.

The case furnishes evidence of another foreclosure. The lease is conclusive evidence of the possession in the demandant, and of notice of that possession to the tenant, June 5, 1839. A tenant is estopped from controverting his landlord's title. 2 *Stark. Ev.* 313. This possession was continued, by means of the tenancy of the tenant, from that time not only to the end of the year, but to July 6, 1840, when this action was commenced; for although the lease was for a less term of time, holding over, as we have seen, is no evidence of an adverse possession. This constitutes another foreclosure, unless defeated by the reservation in the lease, or by

the provisions of the act of July 4th, 1834. *2 N. H. Laws* **151.** The reservation did not affect this foreclosure ; for in the case supposed, *i. e.*, if the possession commenced June 5, 1839, the laws of the land would have given all the right to redeem that the reservation could have given, and more. The act of July 4th, 1834, (relating to the foreclosure of mortgages,) does not apply, the tenant being in possession all the time, as tenant of the demandant. To require a notice in such a case, and under such circumstances as here exist, by a publication in a newspaper, would be to require the performance of an act wholly useless, if not ridiculous. The tenant had, in fact, all the information that the statute required to be given to the mortgager or his heir, or to any other person.

*Aikens,* (of Vt.) for the defendant.

PARKER, C. J. Prior to the 26th of August, 1837, Austin Tyler became assignee of the mortgage made by Cook to Spaulding, and the defendant, Comings, was the owner of the equity of redemption, by a conveyance of the demanded premises from Cook, subject to the mortgage.

On that day Tyler commenced a suit against the defendant, upon the mortgage, and at the October term, 1837, obtained a conditional judgment, for possession, unless the defendant paid $111·03, with interest, and costs, within two months from the date of the judgment. The writ of possession was executed April 6, 1838, and the defendant attorned and became the tenant of Tyler, and was to pay him rent. This was a good possession, on the part of Tyler, for the purpose of foreclosure. Peaceable possession, by the defendant, as his tenant, under this agreement, for the term of one year, without any attempt to redeem, would operate as a foreclosure of the mortgage. *4 N. H. Rep.* 424, *Kittredge* vs. *Bellows.*

There was no tender of the money due, within the year.

Articles of produce were received, which, by the agreement of the parties, were to be applied in payment; but it does not clearly appear that they amounted to the sum due, as found by the conditional judgment. It is immaterial how this may be, for the defendant afterwards settled that account with Tyler, and took his note for the balance, which he subsequently negotiated, and which has been paid. The defendant, after that, cannot say that this transaction operated as a redemption of the mortgaged premises. The produce cannot be applied to the mortgage debt after he has received payment for it in another mode; and by taking Tyler's note upon the settlement, and negotiating it, he effectually rescinded the contract by which the produce was to be applied to the payment of the mortgage debt.

If, then, Tyler had not assigned the mortgage before the expiration of the year, there would clearly have been a foreclosure, on the facts thus stated—the defendant having remained in the actual possession of the premises more than a year after he thus became the tenant of Tyler.

But, a short time before the expiration of the year, Tyler assigned the mortgage to the plaintiff, and the next question is upon the operation of this assignment. The tenant still continued in possession.

For some purposes the assignment of a mortgage is to be regarded merely as the transfer of a debt, charged upon land, the mortgage being incident to the debt. For all the purposes of security to the assignee and to enable him to obtain any just remedy under the mortgage, the assignment of the debt and mortgage passes the legal estate. It is said, in *Hills* vs. *Eliot*, 12 *Mass. R.* 26, that by an assignment the assignee is put in the place of the mortgagee to all intents and purposes.

There seems to be nothing to prevent the assignment of the mortgage title, in the fact that the mortgagee has taken possession of the premises, and holds them by a tenant. The entry of the mortgagee, and a possession by him, does

not change the nature of his interest, or prevent it from be-
ing assignable, with all its incidents.   The assignment does
not of itself operate to stay the foreclosure.   8 *N. H. Rep.*
434, *Bailey* vs. *Willard ;* 7 *Greenl. R.* 382, *Thompson* vs.
*Chandler.*

If an assignment is made just before the expiration of the
right to redeem, with a view of preventing the redemption,
that may be regarded as a fraud, of which the party shall
not take advantage to foreclose the mortgager, or his grantee,
until he have a reasonable time to make a tender to the
assignee.   If made a short time before the expiration of the
right to redeem, without fraud, it may keep the equity open,
until the mortgager, or those claiming under him, by the
exercise of reasonable diligence can find the assignee, and
offer to perform the condition.   Where an assignment is
made, and no notice is given to the owner of the equity of
redemption, a payment by him to the mortgagee has been
held valid.   4 *Vesey, Jr.* 189, *Williams* vs. *Sorrell ;* 6 *Johns.
Ch. R.* 427, *James* vs. *Johnson.*   But these matters become
immaterial in this case, by the subsequent proceedings ex-
tending the time of redemption.

The defendant held over after the expiration of his lease
from Tyler, but this was not an adverse possession, or evi-
dence of such a possession.   1 *Caines' R.* 394, *Brandter*
vs. *Marshall.*   He was tenant still to some one.   Of course
he was tenant to the plaintiff, who then held the mortgage
title, by the assignment from Tyler, after Tyler had taken pos-
session, and the defendant had become tenant.

Such being the relation of the parties, and the defendant
having all the right to redeem that existed, (whether pro-
longed or not by the assignment, is of no consequence,)
the plaintiff, on the 5th of June, 1839, made a lease of the
premises to the defendant, to hold until the first of April,
1840, and the defendant agreed to surrender the possession
at that time.   The lease reserved to the defendant all the
right in equity to redeem the premises, during the term,

which he had at its date. This is not in terms the acknowledgement of an existing right. It might, perhaps, standing alone, be regarded, as has been argued by the counsel, merely as the extension of the right to redeem in case any then existed. But the receipt, by the plaintiff, of a part of the mortgage money from the defendant at the same time, was a waiver of any foreclosure that might otherwise have existed. 6 *N. H. Rep.* 12, *Robinson* vs. *Batchelder ;* 4 *Greenl. R.* 495, *Quint* vs. *Little ;* 1 *Sumner's R.* 109, 118, *Dexter* vs. *Arnold.* And the clause in the lease, taken in connection with this payment, clearly extended the time of redemption to the first of April, 1840.

Within that time the defendant made a tender, and the remaining question is, whether it was sufficient. He tendered no more than the balance of the amount which was due and payable when the conditional judgment was rendered. But in the mean time other notes had arrived at maturity. The conditional judgment was entered upon the first note only. The second became due April 1, 1838. The possession of Tyler was undoubtedly taken for the purpose of foreclosure, it being after condition broken, and there had been a possession of more than a year under the mortgage after the second note became due, when the agreement of June 5th, 1839, opened or continued the right of redemption. But this was a right to redeem on the payment of the money which had become payable. The defendant could not redeem in March, 1840, when he made his tender, without paying all that was due upon the first and second notes. And it was necessary also that he should pay the amount of the third note, which became due April 1, 1839, within the year following that date, in order to prevent a foreclosure. Where the entry is after condition broken, whether it is made under process of law, or without such process, peaceable and continued actual possession for the space of one year, without payment or tender of the money due, bars the right of redemption. *N. H. Laws [Ed.* 1830]

486. The same principle must be applied where an entry is made after breach of one of several conditions, and subsequent to the entry the breach of another condition occurs. If peaceable possession is continued, and no performance, or tender of performance, of such other condition, is made within a year after the breach of it, the mortgage will be foreclosed, notwithstanding a tender of performance upon the condition which was broken before the entry. The mortgagee in such case holds for the breach of all conditions which occur during the time of his possession, (it having been taken after a breach, and for the purpose of foreclosing,) unless there is something to rebut or control such a result.

The statute of July 4, 1834, enacts that no possession by a mortgagee, or his assigns, shall bar or foreclose the right to redeem against any person but the mortgager and his heirs, unless the person in possession for the purpose of foreclosing shall, at least six months before the right to redeem would be foreclosed, publish a notice in some newspaper in the manner there prescribed. But there is a proviso that the act shall not extend to or in any way affect the foreclosure of a right of redemption under a possession obtained by a suit at law. The possession in this case was obtained by a suit at law, and it was not therefore necessary for Tyler, or the plaintiff, to advertise, the case being within the proviso. It is unnecessary, therefore, to consider whether that statute is applicable to a case where the mortgagee, or his assignee, enters without suit, after condition broken, and the assignee of the mortgagee becomes a tenant to him, or whether such assignee having actual notice, and himself holding the possession, under the mortgage title, as tenant, will be foreclosed without an advertisement. It is clear enough that an advertisement might not add much to his knowledge upon the subject, but it is by no means clear that it is to be dispensed with in such case.

*Judgment for the plaintiff.*