## GOULD *v.* WHITE.

The court will not set aside a verdict as against evidence, where the credibility of a witness is to be considered. Neither will they set it aside because, upon an examination of all the evidence, they might have arrived at a result different from that found by the jury. They will not set it aside unless satisfied beyond doubt that substantial justice has not been done.

If a mortgagee, who has foreclosed the mortgagor's right to redeem the premises, afterwards accepts from the mortgagor payment of the mortgage debt, he thereby waives the foreclosure.

Payment of a debt due by specialty will not be presumed till the lapse of twenty years; but a shorter time may be considered by a jury, in connexion with other evidence, as tending to show payment.

Unexplained possession by a mortgagor of premises for a term less than twenty years, may be left to the jury, in connexion with partial payments of the mortgage debt, as evidence tending to show the debt fully paid.

WRIT OF ENTRY, to recover possession of a tract of land, situated in Bartlett, in this county. The writ was dated July 13th, 1849, and the cause was tried upon the general issue.

On the part of the demandant, it was proved that at the September term of the common pleas, 1829, a conditional judgment was rendered in favor of the demandant against the tenant for possession of the demanded premises, in an action brought by the demandant, upon a mortgage given by the tenant, on the 22d day of November, 1826, to secure the payment of a promissory note of the same date, signed by the tenant, for the sum of $250, payable to the demandant or order in two years, with annual interest, the amount of said conditional judgment being $299,31, with costs of suit, $7,80, and forty cents more for the writ of possession which issued thereon, and that said writ of possession was duly served in December, 1829; and upon this evidence the demandant rested his case.

The tenant, for the purpose of proving that the conditional judgment had been discharged by the payment of the amount thereof, introduced evidence to show that at the

time of the service of the writ of possession, the demanded premises were his homestead farm, and that he had continued in the actual possession and occupation of said premises as his homestead, from that time till the commencement of this action, and then introduced the following evidence, to wit:

The deposition of Levi Parker, who testified that about the year 1844 he went to the house of the demandant, for the purpose of negotiating with him for the purchase of a part of the demanded premises, and in a conversation which took place in the house, asked the demandant if he owned the White farm, to which he replied that he did not. That the witness then asked him if he expected the farm would fall into his hands, to which he also replied that he did not. That the witness then asked him if White had paid the mortgage which he had upon the premises, and the demandant answered that he could not tell whether he had or not until he had a settlement with White, and that it might turn out that he owed White a trifle, or White owed him a trifle.

Also the deposition of Silas D. Stanton, who testified that about the year 1838 or 1839 he was in White's employ, and drove a cow and a pair of three year old steers from White to Gould; that Gould then stated to him that he, Gould, allowed White a great price for the cow and called it square, but the steers he was to pay White the money for; that Gould did not tell him what dealings the price allowed for the cow made square; that he, Gould, sent five dollars by the witness to White, and requested him to tell White that he would pay him the balance in a short time.

Also the deposition of James Mead, who testified that at some time between the years 1831 and 1836, White let Gould have an ox, a cow and a pair of steers; also oats at sundry times, but without stating the quantity; and that about the year 1834 or 1835 Gould had horses and colts

kept at White's, both in winter and summer, but without stating how many or how long, further than that he thought two grey colts, one of which he afterwards saw in Gould's possession, were kept there more than a month.

Also the deposition of Ebenezer Garland, who testified that he knew of White's keeping three or four colts for Gould, but could not say how long; and that in the year 1835 or 1836 Gould told him that he, Gould, had had four quarters of ox beef of White.

And the tenant contended that this evidence, in connexion with the length of time that the tenant had been in possession of the demanded premises since the service of the writ of possession, without evidence on the part of the demandant to explain that possession, was competent to be submitted to the jury as evidence of the payment of the mortgage debt and the redemption of the mortgaged premises.

It was objected, on the part of the demandant, that if the time of redemption expired without payment of the mortgage debt, any payment thereof made afterwards would not constitute a defence to this action, and that this evidence was incompetent to prove payment of the mortgage debt, within one year from the time of the service of the writ of possession.

And it was further objected that if such payment, made after the time of redemption had expired, would, under any circumstances, constitute a defence to the action, it would be only when an agreement to that effect had been made by the parties, and that this evidence was incompetent to prove such agreement, and payment in pursuance of it.

But the court held that if such payment were made within one year after the service of the writ of possession, or if such payment were made by the tenant, and received by the demandant at any time after the foreclosure, while the tenant was in possession of the premises, in pursuance of an understanding between the parties that notwithstanding the foreclosure, the tenant might redeem the premises

by such subsequent payment, such payment would constitute a defence to the action, and admitted the evidence as competent to prove such payment.

The demandant then introduced the following witnesses, to wit: Hazen Pitman, who testified that he owned land adjoining the demanded premises; that about the year 1840 the dividing line between his land and the demanded premises was run out by a surveyor; that the witness, being dissatisfied with the line as thus run out, as he thought it ran on his land the distance of two or three rods at one end of the line, stated to White that he should see Gould and get him to establish the line; that White then said to him that although the farm was in Gould's hands, yet he, White, should in the end settle up with him, or pay him up, and that then the witness would have to settle the line with him, White; that after this running of the line a division of the fence on the line was made by the fence viewers, between the witness and White; that White built his part of the fence on the line so run out; that the witness built his part not on the line as run, but on the line claimed by him, so that it did not meet the fence built by White within about a rod and a half; that an unfriendly state of feeling between the witness and White grew out of this controversy in regard to the line, and a difficulty arose between them relative to the grass on the land thus in dispute; that about the year 1847 or 1848 the witness applied to Gould to have the line established; that thereupon Gould wrote a letter to White, which the witness carried to him; that the witness and White then agreed upon another surveyor to run the line, who soon after came on and run it out; that by this running it fell about where the witness claimed it to be; that the witness' part of the fence was, soon after this running, put upon the line as thus run; that the witness had ever since occupied to that line on one side, and White on the other; and that in the fall of 1851, White's part of the fence was placed on the same line.

Also William B. Perkins, who testified that about a week before the trial of this action, he was present at a conversation between the demandant and Levi Parker, the witness, in which Parker stated that he was dragged into giving his deposition used by the tenant, and that he hardly knew what he testified in it, and that he was mistaken in what he had testified in that deposition, in regard to the conversation between him and Gould, at Gould's house, as he either misunderstood Gould or Gould him.

The demandant also introduced evidence tending to impeach the general character of said Parker for truth; and evidence was introduced by the tenant tending to support his general character for truth.

The demandant also introduced Zara Cutler, Esq., who testified that he was employed by the demandant to institute this action, and that by direction of the demandant, before commencing it, he wrote a letter to the tenant upon the subject; that the tenant, thereupon, called at the office of the witness, and inquired what Mr. Gould wanted; that the witness then told White that Gould had directed him to commence a suit for the possession of the farm, and that Gould wanted the farm or his money; and that White then said he would see Gould about it before the time of service was out, or before court.

The demandant introduced a note, signed by White, dated Novemher 25th, 1833, for $34,87, payable to said Cutler or order, on demand with interest, and by said Cutler indorsed in blank; and said Cutler testified that said note was sold and indorsed by him to the demandant, more than fifteen years before.

The demandant also introduced two other notes signed by the tenant, and payable to the demandant or order, with interest; one dated October 10th, 1829, for $1,68; the other dated February 11th, 1830, for $20; and also a paper of which the following is a copy:

Mr. B. Gould, Sir: Henry White's oxen I sold this day at vendue.    They were struck off to Col. E. H. Meserve for $26,81, it being the amount of execution.

A. GILMAN.

Received the above $26,81 of Benjamin Gould.

HENRY WHITE.

Jan. 18th, 1831.

No other evidence was introduced by either party.

The court instructed the jury that the tenant had the right to redeem the farm by the payment or tender to the demandant, at any time within one year from the time of the service of the writ of possession, of the amount of the mortgage debt, costs, fees of the officer for serving the writ of possession, and interest; and that if such payment, or a tender thereof was made, the farm would thereby be discharged from the mortgage, and this action could not be maintained.   And further, that if the parties, after the expiration of the year from the time of the service of the writ of possession, and after a foreclosure of the right of redemption might have been effected, made an arrangement, or had an understanding, that the tenant might remain in possession of the farm, and have the privilege of redeeming it by the payment of the debt, costs and interest, and such payment were made in pursuance of that arrangement or understanding, although a foreclosure might have been effected, the foreclosure would thereby be waived by the demandant, and such payment would constitute a defence to the action; and that if the jury believed from the evidence in the case, considered in connexion with the length of time that the tenant had been in possession since the service of the writ of possession, and with the fact that this possession was not otherwise accounted for or explained, that such payment had in fact been made, they should return a verdict for the tenant, otherwise for the demandant; to which instructions the demandant excepted.

---

The jury returned a verdict for the tenant, which the demandant moved to set aside, and that a new trial be granted for alleged error in the rulings in the instructions of the court, and because the verdict was against evidence, and not supported by the evidence in the defence.

*Eastman, Haywood* and *Cutler*, for the demandant.

I.   It appears in this case that in September, 1829, Gould, the demandant, obtained a conditional judgment, founded on a mortgage of the land in question, against White the tenant, which judgment amounted, in debt and costs, to $307,51.

In December, 1829, the writ of possession was served, and the possession of the premises was delivered to Gould, for the purpose of foreclosure, and White then took possession of the premises as the tenant of Gould.   White claims that the amount of the conditional judgment has been paid. There is no evidence that a cent of it was paid within the year after the service of the writ of possession.   And if White did from time to time let Gould have property, it must be shown affirmatively, on White's part, that it was paid by him and received by Gould as a payment on the mortgage, and that it was of sufficient amount, or it wil not constitute a defence.   It would be of no consequence how much Gould might owe White on transactions aside from this mortgage.   It could be no defence unless the money had been applied, or there was an agreement to apply it in discharge of this mortgage debt.

The payments which White attempts to prove are as follows:

By the testimony of Silas D. Staunton, it is proved that in 1838 or 1839 White let Gould have a pair of three year old steers; but it appears that Gould was to pay the money for them, and did send White $5,00 towards them by the witness.

It also appears by the testimony of this witness, in sub-

Gould v. White.

stance, that Gould had received a cow of White, for which he allowed him a high price and called it even; but what they called even the witness did not know.

By the testimony of James Mead, it is proved that in 1831 and 1836, White let Gould have an ox, a cow and a pair of steers; also oats at sundry times, but how much is not proved; and it appears by the testimony of said Mead and Ebenezer Garland that White kept horses and colts for Gould on the farm, but how much does not appear. And by the testimony of Garland it appears that Gould said that he had four quarters of ox beef of White.

This is all the property that ever passed from White to Gould, of which there is any evidence. It appears in the case that White owed Gould several debts. It is, therefore, more likely that the property was delivered in payment of rent, or on the other debts, than on the mortgage, which was foreclosed, and the time of redemption had passed before the first payment was made.

What Gould said, as testified to by Parker, was not an admission that the mortgage was paid; but Parker testifies that Gould said that he did not know whether it was paid or not, and could not tell till he and White settled.

Gould, on his part, shows a definite sum due and a foreclosure of the mortgage. White, at most, shows that it might or might not have been paid. It was incumbent on him, in defence, to show distinctly that it was paid, and that it was understood by Gould that he received it in payment of the mortgage.

It appears that White, in his acts and doings with the witness Pitman, and by what he said to Mr. Cutler, acknowledged that Gould had a right in the farm.

We, therefore, think that, in this case, " the verdict is decidedly against the weight of evidence, so that it is apparent that the jury must have neglected to consider the facts, and overlooked prominent and essential points in the evi-

---
Gould *v.* White.

---

dence." And we ask the court to order the verdict set aside. *Wendell* v. *Safford*, 12 N. H. Rep. 171.

II. We contend that the court were wrong in admitting the evidence introduced by the tenant as competent and sufficient to prove the payment.

III. We contend that the court were wrong in directing the jury to consider the length of time that White had been in possession of the premises since the service of the writ of possession, and in intimating to the jury that this possession was not accounted for or explained.

We contend that inasmuch as the law permits the owner of land to sleep upon his rights for any length of time short of twenty years, without losing his title, or any part of it, that the fact that he so neglects to assert his right requires no explanation, and that it creates no presumption against him. But the court, in this case, put this fact to the jury in a way to lead them to apprehend that the lapse of time did create a presumption against the demandant.

In this case, White, having in 1829 entered into possession as the tenant of Gould, the presumption of law is, that he held in subordination to the right of Gould, and White was entitled to no presumption in his favor from lapse of time. *Lund* v. *Parker*, 3 N. H. Rep. 49.

*Burns & Fletcher*, for the tenant.

It is contended that no part of the judgment was paid within the year after the service of the writ of possession, but it is submitted that this makes no difference. If Gould consented to receive it at any time, it would inure to the benefit of the defendant the same as though it had been paid before the estate had become absolutely foreclosed.

It is a general rule, that receiving in whole or in part the mortgage debt, included in a decree of foreclosure, after it has become absolute, will let in the mortgagor to redeem. *Smalley* v. *Hickok*, 12 N. H. Rep. 163. Such receipt would be an unequivocal act of waiver of the forfeiture.

In 1844, the plaintiff said he did not own the farm; that he did not expect that it would fall into his hands; that he could not tell whether White had or had not paid the mortgage; that it might turn out that he owed White a trifle or that White owed him a trifle. These sayings, coupled with the important fact that White has occupied the farm from the time the writ of possession was executed, now more than twenty years, without paying rent, furnish the most convincing proofs that the forfeiture was waived and the mortgage paid.

Again, if the evidence is sufficient to show that the mortgagor did not consent to receive the debt, notwithstanding the year had expired, we contend that from the lapse of time, although a trifle less than twenty years, the jury had the right to consider that matter, with the other evidence of payment.

In *Rex* v. *Stevens*, 1 Burr. 433, Lord Mansfield said that there was no direct and express limitation of time when a bond should be supposed to have been satisfied—the general time was commonly taken to be about twenty years—but he had known Lord Raymond leave it to a jury upon eighteen years.

There is no statute of limitation that bars an action on a bond, but there is a time when a jury may presume the debt discharged, as when no interest has been paid for sixteen years. Lord Raymond in *Mayor of Kingston* v. *Homer*, Cowp. 62.

The court will not give leave to enter up judgment of twenty years standing, it being such a distance of time that the presumption was that the debt was satisfied. *Flower* v. *Bolinbroke*, 1 Strange 693.

Presumption of payment on a bond may arise after eighteen or nineteen years; no positive time has been laid down by the court. Lord Mansfield in *Oswold* v. *Oswold*, 1 Term 271.

In one of the Winchelsea cases, 4 Burr. 1962, Lord Mans-

field said that twenty years was the *ne plus ultra*, beyond which the court would not disturb a peaceable possession, but that every case within twenty years would depend upon its particular circumstances. *Rex* v. *Wardropper*, 4 Burr. 1963, 4, 5..

EASTMAN, J. It is contended that the verdict rendered in this case was against evidence, and a motion is made to set it aside on that account.

Questions similar to this have been raised and considered several times by this court within the past few years, and the rules governing motions of this class have become well established.

The court will not set aside a verdict as against evidence in a cause, merely because they might, upon an examination of the evidence, have arrived at a result different from that found by the jury. Nor will they set it aside on this ground, where the credibility of witnesses is to be considered, presumptions are to be raised and inferences to be made, and where the nature of the evidence is such that different persons might reasonably have different impressions concerning it. *Wendell* v. *Safford*, 12 N. H. Rep. 171.

They will not interfere to set aside a verdict as against evidence, unless fully satisfied that it was procured by corruption, or by manifest mistake in the consideration and application of the evidence. *Lisbon* v. *Bath*, 1· Foster's Rep. 319.

To induce the court to interfere, it must be apparent that the jury have misunderstood or totally disregarded the instructions of the court upon the evidence, or must have neglected properly to consider the facts, and must have overlooked prominent and ·essential points in the evidence, so that substantial justice has not been done.

Such is the well settled doctrine in this State, and by applying it to the evidence reported in this case, there can be no doubt of the conclusion to which it will lead. The credi-

bility of a witness—and an important one too—Levi Par-
ker, was to be passed upon. The tenant relied upon pay-
ment of the mortgage debt, by virtue of which the deman-
dant claimed the premises. Parker testified that he went
to the house of the demandant, for the purpose of negotia-
ting with him for the purchase of a part of the demanded
premises, and in a conversation between them he asked the
demandant if he owned the White farm, to which he re-
plied that he did not. That he then asked him if he ex-
pected that the farm would fall into his hands, to which he
also replied that he did not. That he then asked him if
White had paid the mortgage which he had upon the prem-
ises, and he answered that he could not tell whether he had or
not, until he had a settlement with him; and it might turn
out that he owed White a trifle or White owed him a trifle.
Now if Parker was disbelieved, his testimony would of
course go for nothing; but if he was credited, it would tend
strongly to show that the debt had been cancelled, and that
the premises belonged to White.

Presumptions might be raised and inferences drawn, and
the nature of the evidence was such that different persons
might take different views of it. There was evidently con-
siderable conflict between the evidence of the parties, and
it may appear very differently on paper from what it did
before the jury. But we discover no evidence of corruption
or mistake by the jury, and whatever our views might be as
to the weight of the testimony, we see nothing that will
warrant us in setting aside the verdict as against evidence.

If, then, the instructions of the court were correct, the
verdict must stand.

To the first part of the instructions there can be no well
founded exception. It was in accordance with the statute
provisions for the redemption of mortgaged premises, while
the right to redeem continues.

Nor would there seem to be any doubt as to the correct-
ness of the latter branch of the instructions. The court, in

effect, instructed the jury, that notwithstanding the fore-closure might have been complete, yet the demandant might waive it, and receive payment of the mortgage debt. And this rule is well recognized both here and elsewhere.

In *Batchelder* v. *Robinson*, 6 N. H. Rep. 12, it was de-cided that if a mortgagee, who has entered and been in pos-session of the land for a year, in order to foreclose the right to redeem, afterwards accepts the money secured by the mortgage, the acceptance is a waiver of the foreclosure. And in *Deming* v. *Comings*, 11 N. H. Rep. 474, it was held that if there has been a foreclosure of a mortgage, a subse-sequent receipt of a part of the mortgage money, by the party holding the mortgage, is a waiver of the fore-closure.

To the same effect are *Willard* v. *Henry*, 2 N. H. Rep. 120; *Quint* v. *Little*, 4 Greenl. 495; and *Dexter* v. *Arnold*, 1 Sumner 118.

There was no error in the course pursued by the court in alluding to the fact of the length of time that the tenant had been in possession. The tenant did not claim the premises by adverse possession, but by having paid the mortgage with the assent and by the agreement of the de-mandant. The question was one of payment, and al-though as a matter of law, the payment of a debt due by specialty will not be presumed until the lapse of twenty years, yet a shorter time, connected with other evidence, may be left to a jury, from which they may find payment. 1 Greenl. Ev. § 39, and cases cited; 2 Phil. Ev. 171; Mat-thew's Presump. Ev. 373; *Winstanley* v. *Savage*, 2 McCord's Ch. Rep. 435, 439; *Goldhawk* v. *Duane*, 2 Wash. C. C. Rep. 323; *Blake's Ex'rs.* v. *Livingston's Ex'rs.* 3 McCord's Rep. 340.

The lapse of time was a circumstance proper for the jury to consider, in connexion with the payments made, and the unexplained character of the possession.

We think that the exceptions must be overruled, and that there must be

*Judgment on the verdict.*