## E. T. BAILEY and a. *vs.* LEVI WILLARD.

If he, who has a right to redeem lands mortgaged, can avail himself of a tender of the amount due made by one in his own name who had no such right, he must do it and bring his bill to redeem in a reasonable time, otherwise the tender will be considered as waived and abandoned.

When one, who has a right to redeem lands mortgaged, pays the amount due and takes an assignment, the mortgage may be considered as discharged, or as still subsisting, according as the justice of the case may seem to require.

PETITION to redeem certain lands in Surry which were under mortgage.

It appeared, that on the 11th June, 1817, Elijah Fuller being seized of the William Ralston farm, in Surry, conveyed the same to Janette Ralston in fee and in mortgage, to secure the payment of six notes, amounting to $2700.

On the 14th June, 1817, said Fuller conveyed the premises described in this petition, being part of the said Ralston farm, to Jonathan Harvey, with warranty.

On 12th May, 1820, Fuller conveyed the premises mentioned in this petition, to Jonathan Harvey by deed of quitclaim, and Harvey on the same day re-conveyed the same premises to Fuller in fee and in mortgage, to secure the

payment of three notes, each dated June 14, 1817, and for $267, with interest annually.

On the 3d November, 1820, Jonathan Harvey conveyed the premises described in this petition, to Jonathan Harvey, junior.

At October term of the superior court in this county, 1821, Janette Ralston recovered judgment against Jonathan Harvey in a writ of entry on her mortgage for the premises mentioned in this petition, and $9 65 costs.

The conditional judgment was for $738 79, then due on the mortgage.

On the 30th November, 1821, Fuller assigned to Willard Harvey's deed of mortgage dated May 12, 1820, and delivered to Willard Harvey's notes before mentioned.

On the 6th December, 1821, Willard entered into a written agreement with Fuller, as follows :

" Whereas Elijah Fuller has assigned to me three mortgages, one made by Jonathan Harvey, &c., all dated May 12, 1820, &c.; now in consideration of said assignments I hereby promise to indemnify said Fuller from a certain mortgage the said Fuller heretofore made to Janette Ralston, of certain lands therein described, in Surry, and on which said mortgage to said Ralston there is due about $1700. L. WILLARD."

On 1st December, 1821, Janette Ralston assigned to Joseph Fox all her interest in said Ralston farm under the mortgage given by Fuller as aforesaid. The consideration of the assignment was $1790.

On the 24th December, 1821, Fox sued out a writ of possession on the said judgment in favor of Janette Ralston against Jonathan Harvey, which was executed on the 26th December, 1821, and the farm leased on the same day to Jonathan Harvey and Augustus Johnson, for one year, at a rent of $120.

On the 24th October, 1822, Willard paid to Fox the whole amount due on the Ralston mortgage ; and Fox conveyed to Willard by deed of quitclaim all his interest in the premises, and assigned to Willard the lease aforesaid ; which, together with the writ of possession, Ralston mortgage, and three of the notes secured by it, was delivered to Willard.

On the 26th February, 1823, Willard entered and took possession of the premises described in this petition, declaring in the presence of Jonathan Harvey that he took possession to foreclose the mortgage, Harvey to Fuller, and has ever since remained in possession of the said premises.

On the 13th February, 1824, Jonathan Harvey tendered to Willard $988 in order to discharge the said mortgage, Harvey to Fuller, which sum Willard refused to receive.

There was at that time due on the last mentioned mortgage $1003 50.

On the 2d February, 1824, Jonathan Harvey and Jonathan Harvey, junior, by deeds of quitclaim conveyed the premises described in this petition to Ebenezer Bailey, who died in the beginning of the year 1825, leaving the petitioners in this case his only heirs at law.

Between the 26th February, 1823, when Willard entered, and the 13th February, 1824, when Harvey made the tender, Willard had expended in repairs $25. And on the 26th February, 1823, Willard leased the premises to Hall and Ransted for three years, at an annual rent of $150.

*Handerson,* for the petitioners.

The case presents two questions.

1. Suppose that the Ralston mortgage is to be considered as discharged, was the tender made by Jonathan Harvey on the 13th February, 1824, sufficient to enable these petitioners to maintain this suit?

2. Is the Ralston mortgage to be considered as a subsisting incumbrance, so that the petitioners, in order to redeem the land, are bound to tender and pay the amount of that incumbrance?

In regard to the first question, the facts are that the amount due on the notes secured by the Harvey mortgage was at the time of the tender $1003 50. Willard had expended in repairs the sum of $25. The whole amount of Willard's claim upon the land was then $1028 50. The

amount tendered was only $988. But Willard had entered and leased the land at an annual rent of $150, more than eleven months before the tender, so that the sum tendered, together with the rent that had accrued at the time, exceeded any just claim Willard had upon the land by a considerable sum.

It is not material that the rent had not become payable. Willard had entered, and must be considered as having been in possession nearly a year. He was bound, then, to account for the profits ; and the amount of the rent reserved shows the amount for which he was bound to account.

It has not been decided, that under the statute of January 16, 1795, the mortgagee on redemption was bound to account for the rents and profits of the land while in his possession ; but it was so reasonable, just and equitable, that he should be held so to account, that no one can doubt that he was bound to do it. 1 *N. H. R.* 161, *Robinson* vs. *Robinson ;* 17 *Mass. R.* 117, *Tirrill* vs. *Merrill ;* 13 *Pick.* 129, *Putnam* vs. *Putnam.*

In regard to the second question, the defendant contends that the Ralston mortgage must be considered as a subsisting incumbrance upon the land ; and that he can hold the land under that mortgage until he shall have received the amount. This depends upon the transaction between Fuller and Willard on the 6th December, 1821. At this time Fuller assigned to Willard the Harvey mortgage and two others ; and Willard, in consideration of those assignments, engaged to indemnify Fuller against the Ralston mortgage. What was the effect of this agreement? Fuller then owed on the Ralston mortgage a considerable sum, which he was liable to pay, his notes then being in the hands of Fox. He was also liable to Harvey, Robbins and Dort, upon his covenants in his deeds to them, he having conveyed to them with warranty. We say that as between Willard and Fuller the agreement of the 6th December, 1821, was a discharge of the Ralston mortgage. Fuller could not be indemnified

in any other way. If it did not mean this, the agreement had no effect. When Willard took a release from Fox of that mortgage, or a transfer of it, with the notes of Fuller to Ralston, could Willard have maintained a suit against Fuller upon the notes? Surely not. He had agreed to indemnify Fuller against those notes, or, in other words, to pay them. And as between Fuller and the grantees of Fuller and Willard, the amount paid by Willard to Fox must be considered as a discharge of the Ralston mortgage; and Willard can now have no claim under it upon the land, either against Fuller or his grantee.

*Chamberlain*, for the respondent.

RICHARDSON, C. J., delivered the opinion of the court.

We shall not stop to enquire whether the amount tendered to Willard was sufficient to discharge the mortgage given by Harvey to Fuller, or whether a tender made by Harvey in his own name could have been adopted by these petitioners so as to enable them to maintain this petition. For, admitting that a sufficient sum was tendered, and that these petitioners might have adopted the tender, we are clearly of opinion, that they were bound to proceed in a reasonable time, and have the question of the sufficiency of the tender settled. The tender was made in February, 1824; Bailey died in 1825. It does not appear that Bailey, in his lifetime, or his executor or administrator after his decease, ever thought of adopting the tender. Nor does it appear that these petitioners attempted to adopt that tender till the 15th March, 1832, eight years after it had been made, when they brought an action to recover the land. 6 *N. H. R.* 156.

And we are of opinion, that after a lapse of eight years it was quite too late to permit the heirs of Bailey to adopt the tender, and that they must be considered as having abandoned and waived whatever right they may have originally had to adopt it.

VOL. VIII. 54

And we are farther of opinion, that had they adopted the tender in season, their neglect to follow it up by a petition to redeem, for eight years, must be considered as an abandonment of it. It must be exceedingly inconvenient to the mortgagee to have the question as to the sufficiency of the tender remain long undecided. And it is doing the mortgager and those who claim under him, no injustice to hold that if he do not pursue his remedy in a reasonable time he must be considered as having waived the tender. What is to be deemed a reasonable time, need not be now settled, because it is clear that an attempt to set up the tender in this case now, cannot be considered as made in due season.

But possession was taken under the Ralston mortgage on the 26th December, 1821; and unless the assignment of that mortgage to Willard, on the 24th October, 1822, must be considered, under the circumstances, as a discharge, he is entitled to hold this land under that mortgage. The question then is, whether Willard's agreement with Fuller, on the 6th December, 1821, to save Fuller harmless from the Ralston mortgage, made the payment to Fox by Willard a discharge of that mortgage?

In order to determine this question, it is necessary to examine the situation of the parties to that agreement at the time it was made.

Fuller was indebted to Fox, on the Ralston mortgage, about $1700.

The written agreement between Willard and Fuller mentions three mortgages assigned by Fuller to Willard. What two of them were is not stated in this case. But in *Willard* vs. *Harvey*, 5 *N. H. R.* 253, it appears that besides Harvey's mortgage, there was one given by Dort for $264, and one given by Robbins for $300.

The three mortgages assigned to Willard by Fuller, with interest, amounted to about $1700, and it seems that they embraced the whole of the Ralston farm.

Fuller's object in his contract with Willard was, to make the three mortgages clear him from the Ralston mortgage. He did not probably wish to be called upon to pay that mortgage, or to be liable to Harvey, Dort and Robbins, on his covenants of warranty with them, in case they should discharge that mortgage.

Willard might have been willing to take the three mortgages and save Fuller harmless from the Ralston mortgage, and not willing that the Ralston mortgage should be discharged; because, in that case, a part of the Ralston farm might be redeemed and the rest left in his possession.

And Harvey, Dort and Robbins were placed in no worse situation by Willard's taking an assignment of that mortgage than they were before. They could not before hold the land without discharging that mortgage. If, before the contract with Willard, they had paid the Ralston mortgage, Fuller had their mortgages to meet any claim they might have had against him on his covenants of warranty. And after that contract, if they paid and discharged the Ralston mortgage, Willard had their mortgages to meet their claims against Fuller on the covenants of warranty, and thus save Fuller harmless.

So far as the situation and probable views of Fuller and Willard are disclosed in this case, there seems to be no reason to suppose that the understanding between them was that the Ralston mortgage should be discharged.

In a case like this, the mortgage is to be considered as discharged, or as still subsisting, according as under the circumstances the justice of the case may seem to require. But there is nothing disclosed in the case of these petitioners that seems to us to entitle them to have the Ralston mortgage considered as discharged.

We are, therefore, of opinion that for this reason the petition cannot be sustained.

*Judgment for the defendant.*