# Low *v.* Blodgett & *a.*

It is a general rule that a party to the record, in a civil suit, is not a competent witness for himself or a co-suitor.

A party shall not be compelled, either in a civil or a criminal trial, before the jury, to give evidence against himself.

And this rule extends to all the real parties to the suit, whether they are the parties of record or not.

Whether this rule extends to a party not of record, but who has become the party in interest since the commencement of the action — *quære.*

The general rule is, that parol, contemporaneous evidence, is inadmissible to vary the terms of a valid, written instrument.

But this rule seems to be applicable only in controversies between parties to the instrument, their representatives and those claiming under them ; but not to third persons or strangers.

The purchase of a note by a surety, and an assignment thereof by the holder to a third person, in trust for the benefit of the surety, will not necessarily operate as a payment and discharge of the note, as against the principal.

Where an action was brought by the payee of the note, against the principal and his surety, and afterwards, an agent of the surety, for his benefit, purchased the note of the payee, and the same, together with the action, was assigned to the agent: *Held*, that the purchase and assignment did not operate as a discharge and payment of the note, nor to defeat the suit, as against the principal; and that the action might well be maintained.

Assumpsit, on a promissory note, dated April 3d, 1847, for two hundred dollars, payable to the plaintiff or order, in one year, with interest, signed by said Blodgett, and by said Eaton as his surety. The writ was dated September 25, 1848. Blodgett defended the action on the ground that the debt had been paid by Eaton, after the suit was brought, and before the

10 *

action was entered; and he called, as a witness, Abraham Bean, the officer who served the writ.

The counsel for the plaintiff objected to his being sworn, on the ground that after the action was brought and the writ served by said Bean on the defendants, he, (Bean,) had become interested in the suit, as the real plaintiff in the action; and he produced the writ, on the back of which was this indorsement: "In consideration of two hundred and nine dollars and five cents, paid me by Abraham Bean, I hereby sell, assign and set over to him, the within suit, debt, and note, to his own use. Oct. 10, 1848. JOSEPH LOW."

The court overruled the objection, and the witness was sworn.

He testified, in substance, that after he served the writ, Eaton came to him and wished him to take an assignment of the debt, and said he would pay him for his trouble, as there was some property so situated that he thought it would be for his (Eaton's) advantage to have an execution come out in some other person's name than his own.

The witness told Eaton that he had no money to buy the debt with. Eaton said he had the money; and thereupon let the witness have it, to an amount sufficient to pay the debt, and witness gave his note to Eaton for the same. He then went to Low, and paid and took up the note in suit, and Low made the assignment upon the back of the writ.

The witness further testified that he did not know whether he bought the debt for himself or Eaton; that his understanding was that he was to hold on upon the debt until he got his own note; and that, if this suit did not succeed and the debt was not collected of Blodgett, he was not to pay his note to Eaton; that he supposed the purchase of Low was for the benefit of Eaton and himself, although he could not tell what benefit he, himself, was to derive from it; that he did not know of any benefit that he expected, unless it was that Eaton would do him some favor, and would pay him for his trouble.

The plaintiff's counsel excepted to the evidence of Bean, because it went to explain, vary, control, and contradict two written contracts, to wit, the assignment of Low to Bean, upon the

back of the writ, and the note given by Bean to Eaton for the money borrowed to pay Low ; " and also, because " the evidence was incompetent to be submitted to a jury, to defeat the action."

The court overruled the exceptions, and instructed the jury that if they found that Bean was the *bonâ fide* purchaser of the debt from Low, the action could be maintained, and the verdict should be for the plaintiff; but if they found that Bean was the mere agent of Eaton in making the purchase, and that the purchase was made for Eaton, with his money, and not for Bean, it would amount simply to a payment of the debt by Eaton, and this action could not be sustained, although Eaton might sustain one against Blodgett, for money paid.

The jury returned a verdict for the defendants ; and the counsel for the plaintiff moved to set the same aside and for a new trial, for supposed error in the rulings and instructions of the court ; and also because the verdict is against evidence.

*Fowler*, for the plaintiff.

*Pierce & Minot*, for the defendants.

Woods, J. The attorney who appeared in this case in behalf of the plaintiff, objected that Bean was not to be sworn as a witness in the cause, upon the ground, that although he was not a party to the record, yet he was the real plaintiff in the action. And in proof of that fact he gave in evidence an assignment of the note to recover which the action was brought, and of the action itself, to Bean. The objection is to be regarded as made on behalf of Bean himself. The question, upon this branch of the case, is whether the ruling of the court, requiring the witness to testify in the cause, was correct. Whatever interest Bean had, or claimed to have, was acquired after the commencement of the action.

It is no doubt a general rule, that a party to the record in a civil suit cannot be a witness for himself or a co-suitor, nor can he be compelled, in trials by jury, to give evidence for the opposite party against himself, either in civil or criminal cases. And this

rule extends to all the real parties to a suit, whether they are set forth on the record as such or not. *Fenno* v. *Granger*, 3 Camp. 177; *Appleton* v. *Boyd*, 7 Mass. Rep. 131; *Manson* v. *Lamb*, 7 Cowen, 174; *Rex* v. *Woburn*, 10 East, 395.

But the question properly arising, is whether the fact that the witness acquired the interest subsequently to the commencement of the action, did not deprive him of the right to object to give evidence in behalf of the opposite party, or whether he was compellable to give evidence, notwithstanding he had become the real party to the suit.

This is not the case of a witness interested in the success of another party, called by that party to testify against the opposite party, when the interest in the success of the party calling him has been acquired since the commencement of the suit; nor of one who had witnessed the original transaction at the call of both parties, in regard to which some difference of opinion seems to exist. *Winship* v. *Bank of the United States*, 5 Peters, 529; 1 Greenl. Ev. 418. But upon the proper evidence upon which the question arose and the ruling was made, it was the case of the real party, who had become such after the commencement of the action; and who was, by the ruling of the court, compelled to give evidence before the jury, to prove the transaction by which he claimed to be interested as a party. The real question, in that state of the case, was whether a party, shown *primâ facie* to be the real party, can properly be required to give evidence before the jury, touching the merits of the action. Such a doctrine is certainly against the general principle, and if it can be maintained must form an exception to it, based upon the fact that the interest is acquired subsequently to the commencement of the action. But whether such exception to the general rule exists or can be maintained, is a question which we need not determine for the purposes of this case. We need not stop to determine this question, nor need we decide the question arising upon the exception of the plaintiff to the evidence of Bean, resting upon the ground that it went to explain, vary, control, and contradict the contract of payment of Low to Bean, and the note given by Bean to Eaton.

The general rule no doubt is, that " parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument." 1 Greenl. Ev. § 275.

But the rule under consideration, seems to be applicable only to cases of controversies between parties to the instrument, their representatives and those claiming under them ; but not to third persons or strangers. *Kreider* v. *Lafferty*, 1 Wheaton's Rep. 303 ; 2 Stark. Ev. 575 ; 1 Greenl. Ev. § 279. In a suit between a party to a written agreement and a third person, the latter may show that the actual agreement was different from that reduced to writing, or that it contained other stipulations. *Woodman* v. *Eastman*, 10 N. H. Rep. 359.

A further question arises as to the correctness of the instructions of the court to the jury. They were told, that if they found that Bean was the mere agent of Eaton (one of the defendants,) in making the purchase, and that the purchase was made for Eaton, with his money, and not for Bean, it would amount simply to the payment of the debt by Eaton, and this action could not be maintained, although Eaton might sustain one against Blodgett, for money paid.

The return of the verdict for the defendants, is equivalent to finding that Bean acted in the capacity of agent of Eaton in procuring the assignment of the note and action to himself. It was only upon the finding of that fact, that they were instructed to return a verdict for the defendants. Bean, then, is to be regarded as having acted in the procurement of the assignment from Low, as the agent of Eaton ; and the assignment to have been made to him, in trust, for Eaton.

The instructions to the jury were, in effect, that such a purchase and assignment were, in law, a payment and discharge of the note ; and that the action could not be maintained. Is such the legal result of the transaction ?

It is plain that such was not the purpose of the parties. They did not intend a payment. This is fully shown by the direct testimony of Bean, as well as by the form and manner of the transaction. The form was that of a purchase and assignment, and not a payment and discharge ; and the witness shows the

purpose to have been to continue both the note and action in force.

If a payment or discharge of the note and action was not the design of the parties, was such payment or discharge the legal effect of the transaction ?

Eaton, for whose benefit Bean acted, and who alone was beneficially interested in the assignment, was the mere surety of Blodgett, who makes this defence. As between Blodgett and Eaton then, it was the duty of Blodgett, and not of Eaton, to pay the note, and to hold Eaton harmless in relation thereto.

There is, then, no equitable consideration requiring that the purchase and assignment should be treated or regarded as a payment and discharge of the note. But on the other hand, in order to avoid circuity of action, and maintain the just rights of the parties, justice demands that the transaction should be holden to be a purchase, and the promise of the note still to subsist, if it may, consistently with the rules of law.

As between Eaton and Blodgett, the whole promise of the note and the whole duty to pay it, as well as the costs of the action, rested with Blodgett alone ; although, as between Eaton and Low, Eaton was bound for the fulfilment of the promise and the payment of the costs, as well as Blodgett. And we think that no principle of law or equity will be violated in holding that, for the sake of the remedy, and to enable Eaton to avail himself of the property of Blodgett to pay and discharge the note, the promise of the note still subsists as against Blodgett, notwithstanding the assignment. It is not every payment, even to a promisee of a debt, that will operate to discharge the promise of the contract ; but it is often holden, in such a case, as subsisting or as being discharged according as justice and equity may demand. This is a familiar principle as applied to the payment of mortgages. In such cases, a payment to the mortgagee by a subsequent mortgagee, or any one having an interest in the land mortgaged, does not, necessarily, operate to discharge the debt and mortgage, but it will be holden to operate as a discharge or as an assignment of it, substituting him who pays, in the place of the mortgagee, as justice and equity may require. *Robinson*

v. *Leavitt*, 7 N. H. Rep. 100 ; *Bailey* v. *Willard*, 8 N. H. Rep. 435.

So also, it would seem that a surety, who has been compelled to pay the debt of the principal, will be entitled to be substituted in the place and stead of the creditor, in reference to any securities which he may hold against the principal, whether the same be by way of mortgage or otherwise.   *Richardson* v. *Washington Bank*, 3 Met. 536.   In such case, notwithstanding the payment to the mortgagee, the note or other contract which the mortgage is made to secure, and by which it is upheld, is not regarded as discharged, but as remaining in full force, and the party paying, as beneficially interested in the°same manner as the prior mortgagee before the payment.   If the note or other debt were regarded as paid and discharged by the payment to the prior mortgagee, the debt or other liability being the principal, and the mortgage only the incident, and capable only of subsisting in connection with it and as its concomitant, the property mortgaged would necessarily revert to, and revest in, the mortgagor.   But instead of the payment, to the mortgagee, operating as a discharge of the note or contract, it operates as a purchase and assignment of the claim, together with the security, as its incident, to the person making the payment ; and the contract continues in force, and supports the mortgage.

In the present case, if Eaton had actually paid the note to Low, but with the intention that the action and note should remain in force and the suit should proceed, such payment could not, probably, be properly regarded as a discharge of the promise of Blodgett, and of the action.   The case of the *Bank of Rochester* v. *Gowdy & a.*, decided at the January term of this court, 1845, in Strafford, was an action upon a promissory note, signed by Gowdy as principal, and Lamos and Horn as sureties. An action was commenced against the signer and his sureties by the procurement of the sureties, and afterwards Lamos and Horn paid the balance due upon the note to the Bank, and a receipt of said balance, as paid by the sureties, was made upon the note, and signed by the cashier, and the amount of the same was afterwards repaid to Lamos and Horn by the Bank, and the

indorsement erased. Upon instructions given them by the court below, the jury found that the payment was made under a misapprehension of the legal effect and consequences of the act of payment upon the suit, and the assent of the Bank to refund the money; and it was decided by this Court, that such payment, made to the Bank with no intention to discharge the note and suit, could not be holden to operate as a discharge of the promise of the note, and that the action might, notwithstanding, well be maintained.

But the case under consideration is not one of payment in form or in fact, and therefore we need not decide what might have been the effect if a payment had been made or intended. The jury have found that this was the case of an actual purchase by Bean, for the benefit of Eaton. And we are clearly of the opinion, that there is no principle of law or equity, warranting the court in pronouncing the transaction a payment and discharge of the note and action, contrary to the clear intention of the parties.

The opinion of the Court therefore, is, that the instructions of the court to the jury were erroneous, and that the verdict must be set aside and

*A new trial granted.*